UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RENA AVITABLE AND CLAIRE FEIN<br><br>*Plaintiffs*,<br><br>v.<br><br>DANIEL RAYWOOD,<br><br>*Defendant*. | No. 3:17-cv-01696 (MPS) |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Rena Avitable and Claire Fein filed suit against defendant Detective Daniel Raywood of the West Hartford Police Department. They allege that the defendant subjected them to malicious prosecution in violation of 42 U.S.C. § 1983 when he filed criminal charges against them for a dispute with their plumbing contractor that was, in their view, civil in nature. They seek compensatory damages, punitive damages, as well as attorneys' fees and costs. Defendant filed a motion for summary judgment arguing that he is entitled to judgment on plaintiffs' Section 1983 claim as a matter of law. For the reasons set forth below, defendant's motion for summary judgment is GRANTED.

**I. Factual Background**

The following facts, which are taken from the parties' Local Rule 56(a) statements and supporting exhibits, are undisputed unless otherwise indicated.

**A. Cravo's Allegations to Officer Urso**

On November 30, 2015, Fernando Cravo went to the West Hartford Police Department ("WHPD") and lodged a complaint against plaintiffs with Officer Danielle Urso, who is not a party. ECF No. 28-2 at ¶ 6; ECF No. 29-1 at ¶ 6. He reported to Officer Urso that he was a self-

1

contracting plumber and had been doing renovation work for plaintiffs at 49 Kingswood Road ("49 Kingswood") for approximately one month. ECF No. 28-2 at ¶ 7; ECF No. 29-1 at ¶ 7. Plaintiffs had established a limited liability company that owned 49 Kingswood, ECF No. 28-2 at ¶ 3; ECF No. 29-1 at ¶ 3, and had hired Cravo in October 2015 to install new water lines at the building. ECF No. 28-2 at ¶¶ 4-5; ECF No. 29-1 at ¶¶ 4-5. Cravo reported to Officer Urso that plaintiffs agreed to pay him $850 to install the new water lines, ECF No. 28-2 at ¶ 8; ECF No. 29-1 at ¶ 8, and that he was not paid despite completing the work, ECF No. 28-2 at ¶¶ 9-10; ECF No. 29-1 at ¶¶ 9-10. Cravo provided Officer Urso with a copy of a hand-written invoice for the plumbing work he had completed. ECF No. 28-2 at ¶ 9; ECF No. 29-1 at ¶ 9.

Cravo also reported to Officer Urso that, on November 15, 2015, plaintiffs asked him to perform a second job at 49 Kingswood. ECF No. 28-2 at ¶ 11; ECF No. 29-1 at ¶ 11. The second job included, among other things, replacing radiators on the first and second floors of the residence. ECF No. 28-2 at ¶ 11; ECF No. 29-1 at ¶ 11. Cravo showed Officer Urso text messages he exchanged with Avitable in which they agreed on $6,200 for this work. ECF No. 28-2 at ¶ 12; ECF No. 29-1 at ¶ 12.[1]

---

[1] Defendant states that a true and accurate printout of all text messages between Avitable and Cravo from October 28, 2015 to November 28, 2015 was submitted as an exhibit in this case. ECF No. 28-2 at ¶ 33; ECF No. 28-13. This assertion is supported by an affidavit by Cravo, ECF No. 28-10 at 8, and Fein's testimony that the phone number at the top of the printout is a number for one of Avitable's devices, ECF No. 28-6 at 29. Plaintiffs deny that Fein's deposition testimony "in any way confirms that this was a true and accurate print out," because Fein repeatedly testified that she had no personal knowledge about text communications between Avitable and Cravo, ECF No. 29-1 at ¶ 33; ECF No. 28-5 at 24; ECF No. 28-6 at 28-31. This is not a proper denial as Fein states only that she has no personal knowledge about the fact, which shows only that she is unable to contradict Cravo's affidavit. Moreover, plaintiffs admit that (860) 559-1456 (the number on the printout) was Avitable's cellphone number at all times relevant to this case. ECF No. 28-2 at ¶ 31; ECF No. 29-1 at ¶ 31. They also admit that Avitable exchanged a series of text messages with Cravo – messages that are reflected on the printout – and even rely on those messages to support their arguments. ECF No. 29-1 at ¶¶ 35-42 (admitting statements of fact in which defendants set forth a series of text messages from the

2

Cravo told Officer Urso that, based on the agreement regarding the second job, he purchased more than $1,000 worth of plumbing supplies from Bender Plumbing Supplies ("Bender"). ECF No. 28-2 at ¶ 13; ECF No. 29-1 at ¶ 13. He also reported that Bender delivered the supplies to 49 Kingswood on November 24, 2015 and provided Officer Urso with a copy of the Shipment Confirmation. ECF No. 28-2 at ¶ 14; ECF No. 29-1 at ¶ 14. Cravo reported to Officer Urso that he was present outside 49 Kingswood when the plumbing supplies were delivered. ECF No. 28-2 at ¶ 15. Plaintiffs deny this statement and point to Fein's testimony that she did not know how the supplies got to the residence. ECF No. 29-1 at ¶ 15. This is not a proper denial as plaintiffs cite only a lack of personal knowledge about the fact, rather than any evidence that Cravo was <u>not</u> present when the supplies were delivered. Moreover, Fein testified that Cravo was outside the home with the supplies when she arrived that evening. ECF No. 29-1 at ¶ 15. The fact is therefore deemed admitted. Cravo further reported to Officer Urso that when plaintiffs arrived at 49 Kingswood that day, they claimed that they forgot to bring a check for the $850 they owed him for the first job. ECF No. 28-2 at ¶ 16; ECF No. 29-1 at ¶ 16. Cravo told Officer Urso that, because he still expected plaintiffs to pay him for the first job, he placed the supplies inside the home and planned to return on November 28, 2015, to work on the second job. ECF No. 28-2 at ¶ 17; ECF No. 29-1 at ¶ 17.

Cravo reported to Officer Urso that he returned to 49 Kingswood on November 28, 2015 to begin working on the second job and that neither plaintiff was there to let him into the

---

printout); *id*. at ¶ 34 (plaintiffs arguing that "based upon the chain of messages[,] it is unclear as it appears there was breakdown of communication and missed meeting times related to this work"); *id*. at 6 ¶ 3 (plaintiffs arguing that "[t]he text message chain entered by defendant as Exhibit I does not support the proposition that Cravo was not paid" and that "based upon this chain of texts it appears Avitable met Cravo on Tuesday 24 2015 , after going to bank earlier in day").

residence. ECF No. 28-2 at ¶ 18; ECF No. 29-1 at ¶ 18. He said that Avitable ceased all communication with him that day regarding the outstanding bill for $850 and the materials he had purchased from Bender, which remained locked inside 49 Kingswood. ECF No. 28-2 at ¶ 19; ECF No. 29-1 at ¶ 19. He also showed Officer Urso the text messages that he sent to Avitable while he was waiting outside the residence that day. ECF No. 28-2 at ¶ 18; ECF No. 29-1 at ¶ 18. These messages are as follows:

> [Cravo, 8:01am]: Rena I am going to to the house can you open the door
> [Cravo, 8:10am]: I am at the house call me
> [Cravo, 10:17am]: I am waiting for you call if you don't want to do the job then let me go and get the material
> [Cravo, 2:45pm]: Rena can you have clairese call me

ECF No. 28-2 at ¶¶ 18, 40-42; ECF No. 29-1 at ¶¶ 18, 40-42; ECF No. 28-16 at 3. Defendant asserts that the plumbing supplies from Bender are still inside 49 Kingswood. ECF No. 28-2 at ¶ 48. Plaintiffs do not deny that plumbing supplies are still inside the property, but cite Fein's testimony that the Bender supply list did not appear to match up with the supplies stored inside at 49 Kingswood. ECF No. 29-1 at ¶ 48.

Officer Urso called both plaintiffs during her investigation into Cravo's complaint and neither one answered the calls or responded to voicemail messages. ECF No. 28-2 at ¶ 20. Plaintiffs admit in part and deny in part this assertion. ECF No. 29-1 at ¶ 20. But to support their partial denial, they state only that Avitable "testified that she did not return a telephone call of Officer Urso's." *Id*. This is consistent with the defendant's statement that "neither plaintiff answered the calls or responded to voicemail messages," ECF No. 28-2 at ¶ 20, and plaintiffs do not provide any further explanation of their partial denial. The Court therefore deems this fact admitted. Officer Urso also went to the plaintiffs' residence at 34 South Quaker Lane on November 30, 2015 and, although it was apparent to Officer Urso that someone was inside, no

4

one came to the door. ECF No. 28-2 at ¶ 21. Plaintiffs admit "that is what officer has stated in her incident report and her affidavit" and cite no evidence to suggest that what Officer Urso wrote in the incident report is untrue. ECF No. 29-1 at ¶ 21.[2] Accordingly, the Court deems this fact admitted.

### B. Transfer of Cravo's Case to Defendant Detective Raywood

Cravo's complaint was then transferred from Officer Urso to defendant. ECF No. 28-2 at ¶ 22; ECF No. 29-1 at ¶ 22. Defendant spoke to Cravo on December 17, 2015 and Cravo told him that he still had not received any money from plaintiffs for the first job and that plaintiffs still had not let him retrieve the materials from inside 49 Kingswood. ECF No. 28-2 at ¶ 22; ECF No. 29-1 at ¶ 22. Later that day, defendant went to plaintiffs' residence and spoke with Avitable in the driveway. ECF No. 28-2 at ¶ 23; ECF No. 29-1 at ¶ 23. Defendant told Avitable that Cravo would drop the complaint if plaintiffs returned the materials to him. ECF No. 28-2 at ¶ 23; ECF No. 29-1 at ¶ 23. Defendant asserts that Avitable refused to speak to him about Cravo's complaint and told him to speak to her attorney. ECF No. 28-2 at ¶ 23; ECF No. 29-1 at ¶ 23. Avitable does not deny this interaction, but adds that she told defendant the dispute was a civil matter and gave him her attorney's business card. ECF No. 29-1 at ¶ 23 & 6 ¶ 1. The following day, defendant called Bender and received confirmation that Bender had delivered plumbing materials to 49 Kingswood on November 24, 2015, that the total value of the materials was $1073.21, and that this amount had been billed to Cravo. ECF No. 28-2 at ¶ 24. Plaintiffs

---

[2] The arrest warrants and incident report say that Officer Urso went to the plaintiffs' residence on December 1, 2015, not on November 30, 2015. ECF No. 28-7 at 7; ECF No. 28-8 at 7; ECF No. 28-17 at 2. Whether Officer Urso went to the residence on November 30 or December 1 is not material as plaintiffs do not submit any evidence to dispute defendant's assertion that Officer Urso, at some point after speaking with Cravo, knocked on the front door of the residence and no one came to the door.

"[a]dmit" that "this is what defendant Raywood wrote in in the arrest warrant application/affidavit." ECF No. 29-1 at ¶ 24. They do not dispute the truth of the statement, nor do they cite any evidence suggesting it is untrue. The Court therefore deems this fact admitted.

Defendant asserts that he called plaintiffs multiple times to discuss Cravo's complaint and they refused to speak with him or return his calls. ECF No. 28-2 at ¶ 46. Plaintiffs dispute this statement of fact; to support their denial, they point to Fein's testimony that she picked up a call from defendant, the call dropped, and defendant then left threatening messages that he would arrest her if she did not call him back. ECF No. 29-1 at ¶ 46; ECF No. 28-5 at 21. Fein also testified that defendant called them repeatedly "to intimidate [them], not to hear [their] story." ECF No. 29-1 at ¶ 46; ECF No. 28-5 at 22. Defendant asserts that plaintiffs never made a complaint to the WHPD about Cravo and never told a WHPD officer that they had paid Cravo. ECF No. 28-2 at ¶ 45. Plaintiffs do not dispute this statement, but again note that Avitable specifically told defendant that it was a civil matter and gave him her attorney's business card. ECF No. 29-1 at ¶ 45.

### C. Plaintiffs' Criminal Cases

On January 7, 2016, defendant signed arrest warrant affidavits charging plaintiffs with larceny in the fifth degree, conspiracy to commit larceny in the fifth degree, larceny in the fourth degree, and conspiracy to commit larceny in the fourth degree. ECF No. 28-2 at ¶ 25; ECF No. 29-1 at ¶ 25. He stated, in the arrest warrant affidavits, that Avitable "did not want to answer any of my questions and told me to speak with her attorney," but did not include Avitable's statement that the dispute was a civil matter or the fact that she gave him the attorney's business card. ECF No. 28-7 at 7; 29-1 at 6 ¶ 2. Defendant asserts that Avitable does not dispute the accuracy of any paragraph in his arrest warrant affidavit. ECF No. 28-2 at ¶ 44. Plaintiffs deny this statement,

6

point to Avitable's testimony that Cravo was paid, and assert that defendant's statement in the arrest warrant affidavit that Cravo was not paid is false. ECF No. 29-1 at ¶ 44. But plaintiffs do not deny that defendant believed Cravo had not been paid based on Cravo's report to him, and do not point to any evidence that they told the defendant that they had paid Cravo. Defendant also asserts that while Fein disputes the accuracy of certain information Cravo reported to Officer Urso, as documented in defendant's warrant affidavits, she does not dispute that Cravo actually reported that information. ECF No. 28-2 at ¶ 47. Plaintiffs deny this statement in part but do not point to any evidence that Cravo did not report the information, stating only that neither plaintiff was provided with any statement Cravo may have made to the WHPD. ECF No. 29-1 at ¶ 47.

On January 11, 2016, Superior Court Judge Nazzaro reviewed and signed both arrest warrants. ECF No. 28-2 at ¶ 26; ECF No. 29-1 at ¶ 26. On January 26, 2016, plaintiffs went to the WHPD where defendant served them with the arrest warrants and processed them. ECF No. 28-2 at ¶ 27; ECF No. 29-1 at ¶ 27. On September 16, 2016, the criminal charges against plaintiffs were dismissed in Hartford Superior Court. ECF No. 28-2 at ¶ 28; ECF No. 29-1 at ¶ 28; ECF No. 28-19. During the disposition hearing, the prosecuting state's attorney advised the Court several times that he agreed to dismiss the criminal charges because Cravo was an unlicensed plumber. ECF No. 28-2 at ¶ 29; ECF No. 29-1 at ¶ 29.

## II. Legal Standards

The court must grant a motion for summary judgment if the moving party shows "that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id*. In reviewing the record, the court "must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Gary Friedrich Enterprises, LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013).

### III. Discussion

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and establish the elements of a malicious prosecution claim under state law." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (internal citations omitted). "To prevail on a malicious prosecution claim under Connecticut law, a plaintiff must prove the following elements: (1) the defendant initiated or continued criminal proceedings against the plaintiff; (2) the criminal proceeding terminated in favor of the plaintiff; (3) 'the defendant acted without probable cause'; and (4) 'the defendant acted with malice.'" *Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009) (quoting *McHale v. W. B. S. Corp.*, 187 Conn. 444, 447 (1982)). Defendant argues that plaintiffs cannot establish the second, third, or fourth elements of their malicious prosecution claim and that, in any case, he is entitled to qualified immunity. I find that the undisputed facts, even when considered in the light most favorable to the plaintiffs, show that the plaintiffs' arrests were supported by probable cause – or at the very least "arguable probable cause" sufficient to afford the defendant qualified

8

immunity. Because this is enough to grant the defendant's motion for summary judgment, I do not address the parties' remaining arguments.

"[P]robable cause to arrest is a complete defense to a claim of malicious prosecution," *D'Angelo v. Kirschner*, 288 Fed. Appx. 724, 726 (2d Cir. 2008), and it "exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime," *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks omitted). Where a neutral magistrate has issued a warrant, as in this case, there is "a presumption that it was objectively reasonable for the officers to believe that there was probable cause." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991). "[T]hat presumption can be defeated by showing that a defendant (1) knowingly and deliberately, or with a reckless disregard of the truth, procured the warrant, (2) based on false statements or material omissions, that (3) were necessary to the finding of probable cause." *Ganek v. Leibowitz*, 874 F.3d 73, 81 (2d Cir. 2017) (internal quotation marks omitted). To determine whether false or omitted information was necessary to the finding of probable cause, the court undertakes a two-step process: "First, the court must correct any false statements and supply any omitted material from the affidavit. Second, the court must review the 'corrected' affidavit and determine whether, as a matter of law, probable cause remains." *Barrows v. Coleman*, 352 F. Supp. 2d 276, 282 (D. Conn. 2005) (internal citation omitted). Here, plaintiffs argue that defendant made material omissions in his arrest warrant affidavits by failing to include Avitable's statement that the dispute was a civil matter and the fact that Avitable gave defendant her attorney's business card. ECF No. 29 at 7; 29-1 at 6 ¶ 2. I disagree as the undisputed facts

show that plaintiffs' arrests were supported by probable cause even after supplementing the affidavits with this omitted information.

Plaintiffs were charged with larceny in the fifth degree, conspiracy to commit larceny in the fifth degree, larceny in the fourth degree, and conspiracy to commit larceny in the fourth degree. ECF No. 28-2 at ¶ 25; ECF No. 29-1 at ¶ 25. Under Connecticut General Statute § 53a-119, "[a] person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner."[3] A person is guilty of larceny in the fourth degree when the value of the property or service at issue exceeds one thousand dollars, Conn. Gen. Stat. § 53a-125(a), and is guilty of larceny in the fifth degree when the value of the property or service at issue exceeds five hundred dollars, Conn. Gen. Stat. § 53a-125a(a). And finally, a person is guilty of conspiracy when "with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy." Conn. Gen. Stat. § 53a-48(a).

The undisputed facts set forth in the arrest warrant affidavits are sufficient to establish probable cause that plaintiffs committed these crimes, and "correcting" the affidavits with the omitted information does not change this determination. First, Cravo reported to Officer Urso that plaintiffs never paid him any of the $850 they owed him for the work he completed under his agreement with plaintiffs. ECF No. 28-2 at ¶ 10; ECF No. 29-1 at ¶ 10; ECF No. 28-7 at 6;

---

[3] The definitional statute, Conn. Gen. Stat. § 53a-119, goes on to list examples of larceny, some of which involve theft of services. The specific definition of "theft of services" in this list does not appear to cover the conduct in this case, but the definitional statute makes clear that "larceny. . . is not limited to" the items in the list, Conn. Gen. Stat. § 53a-119, and the substantive statutes establishing the fourth and fifth degree larceny offenses involved here both make clear that they apply to "property or service," Conn. Gen. Stat. §§ 53a-125(a), 53a-125a(a).

ECF No. 28-8 at 6. Second, Cravo provided the officers with (1) text messages that showed an agreement with plaintiffs to complete the second job for $6,200, ECF No. 28-2 at ¶ 12; ECF No. 29-1 at ¶ 12; ECF No. 28-7 at 6; ECF No. 28-8 at 6; (2) the shipment confirmation generated by Bender showing that Cravo purchased supplies and had them delivered to 49 Kingswood, ECF No. 28-2 at ¶¶ 13-14; ECF No. 29-1 at ¶¶ 13-14; ECF No. 28-7 at 6; ECF No. 28-8 at 6; and (3) text messages showing that Avitable did not respond to Cravo's messages about retrieving the materials from inside the building, ECF No. 28-2 at ¶ 18; ECF No. 29-1 at ¶ 18; ECF No. 28-7 at 6-7; ECF No. 28-8 at 6-7. Third, defendant independently verified that Bender delivered plumbing materials to 49 Kingswood on November 24, 2015, that the total value of the materials was $1073.21, and that this amount had been billed to Cravo. ECF No. 28-2 at ¶ 24; ECF No. 29-1 at ¶ 24; ECF No. 28-7 at 7; ECF No. 28-8 at 7. And finally, both defendant and Officer Urso attempted to discuss Cravo's allegations with plaintiffs, and received no information from them contradicting Cravo's account. ECF No. 28-2 at ¶¶ 20-21, 23, 46; ECF No. 29-1 at ¶¶ 20-21, 23, 46; ECF No. 28-7 at 7; ECF No. 28-8 at 7.

In making a probable cause determination, an officer is entitled to rely "on the [victim's] allegations that a crime has been committed" and on "the allegations of [his] fellow police officer[]." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000); *see also Miloslavsky v. AES Engr. Soc., Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992) ("[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth.") *aff'd*, 993 F.2d 1534 (2d Cir. 1993). Thus, the allegations from Cravo, the invoice for the work performed, the information from Officer Urso, the text messages, the statement from Bender, and the lack of any contradictory information from plaintiffs, together, is more than

11

sufficient to warrant a person of reasonable caution to believe (1) that plaintiffs had the intent to wrongfully withhold from Cravo (a) the $850 for the plumbing services furnished to them, and (b) property worth more than $1000, consisting of the plumbing materials locked in the building they owned through their limited liability company; and (2) that plaintiffs agreed with each other to engage in this conduct and that at least one of them committed an overt act to further this agreement. Supplementing the arrest warrant affidavits with Avitable's statement that the dispute was a civil matter and the fact that Avitable gave defendant her attorney's business card would not change this probable cause determination. The omitted information does not call into question any of the undisputed facts already included in the arrest warrant affidavits, nor does it negate any element of the crimes with which plaintiffs were charged. Thus, under the corrected affidavit doctrine, plaintiffs are unable to establish that defendant acted without probable cause.

Plaintiffs also argue that the defendant lacked probable cause because he "did not contact the plaintiffs' attorney." ECF No. 29 at 7. But even if a discussion with plaintiffs' attorney would have resulted in the discovery of information that negated an element of the crimes with which plaintiffs were charged, defendant was not required to contact plaintiffs' attorney. "Once a police officer has a reasonable basis for believing there is probable cause"—as is the case here—"he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997); *see also Jocks v. Tavernier*, 316 F.3d 128, 135–36 (2d Cir. 2003) (explaining that there is no "duty on the arresting officer to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest").

Finally, Plaintiffs appear to argue that defendant lacked probable cause because he was told that the dispute was a civil matter. ECF No. 29 at 7 ("Raywood[] was informed by one of

12

the plaintiffs (Rena Avitable) that the matter involving the contractor Cravo was a civil matter and Avitable asked Raywood to contact her attorney. Therefore, at the time when Raywood filed his affidavit he was aware of this significant information yet he continued to seek a warrant to arrest the plaintiffs on criminal charges.") (internal citations omitted). As an initial matter, the Court notes that a person can face both civil and criminal liability for the same conduct. *See, e.g.*, *Hudson v. United States*, 522 U.S. 93, 95-96 (1997) ("The Government administratively imposed monetary penalties and occupational debarment on petitioners for violation of federal banking statutes, and later criminally indicted them for essentially the same conduct. We hold that the Double Jeopardy Clause of the Fifth Amendment is not a bar to the later criminal prosecution because the administrative proceedings were civil, not criminal."); *Securities and Exch. Commn. v. Westerfield*, 1997 WL 282241, at *3 (S.D.N.Y. May 27, 1997) ("[T]he same conduct that constituted Westerfield's criminal violations of Rule 10b–5 establishes his civil liability under that Rule."); *State v. Farricielli*, 71 Conn. App. 1, 5 (2002) ("It is well settled that a defendant may face both criminal and civil sanctions for the same conduct."). That is, plaintiffs could be engaged in a civil case with Cravo while at the same time facing criminal penalties related to the same underlying dispute.[4] Even if the existence of a civil case was somehow exculpatory, the mere assertion that the dispute was a civil matter would be insufficient to defeat probable cause;

---

[4] A civil action for conversion can be distinguished from larceny in two ways: "First, [larceny] requires an intent to deprive another of his property; second, conversion requires the owner to be harmed by a defendant's conduct." *Suarez-Negrete v. Trotta*, 47 Conn. App. 517, 521 (Conn. App. 1998). Therefore, larceny requires proof of "the additional element of intent over and above" what is required to prove conversion. *Id*. The undisputed facts here were sufficient to establish intent to deprive Cravo of his property. Particularly relevant to intent were Cravo's allegations that plaintiffs refused to pay him for completed work, ECF No. 28-2 at ¶ 10, ECF No. 29-1 at ¶ 10, and the text messages showing that Avitable did not respond to Cravo's messages about retrieving the plumbing materials from inside 49 Kingswood, ECF No. 28-2 at ¶ 18; ECF No. 29-1 at ¶ 18. And as discussed in detail above, the undisputed facts also establish the other components of the crimes with which plaintiffs were charged.

otherwise, any suspect could forestall an arrest by making such a statement. *See Panetta v. Crowley*, 460 F.3d 388, 395–96 (2d Cir. 2006) (explaining that once an officer has a reasonable basis for believing there is probable cause, his "failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause").

### IV. Conclusion

In short, the undisputed facts concerning the circumstances known to defendant when he initiated the larceny charges against plaintiffs make clear that he had probable cause – and at least "arguable probable cause" – to bring those charges. Because probable cause is a complete defense to a claim of malicious prosecution, the defendant's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

                                                                                  /s/
                                                           Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
                August 29, 2019